# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-1965V
(not to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
KATHERINE HUNTOON,                *       Chief Special Master Corcoran
                                  *
            Petitioner,           *       Dated:  January 31, 2023
                                  *
v.                                *
                                  *
SECRETARY OF HEALTH               *
AND HUMAN SERVICES,               *
                                  *
            Respondent.           *
                                  *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Sean Franks Greenwood*, The Greenwood Law Firm, Houston, TX, Petitioner.

*Benjamin Patrick Warder*, U.S. Dep't of Justice, Washington, DC, Respondent.

## DECISION GRANTING MOTION TO DISMISS[1]

On October 5, 2021, Katherine Huntoon filed a petition for compensation under the National Vaccine Injury Compensation Program ("Vaccine Program")[2] (ECF No. 1) ("Petition"). Petitioner alleges that an influenza ("flu") vaccine she received on October 2, 2018, caused her to incur post-viral syndrome and cerebellar ataxia. *Id*.

Respondent filed a Rule 4(c) Report and a Motion to Dismiss in August 2022, arguing that the case was untimely under the Act's three-year limitations period (Section 16 (a)(2)). ECF No.

---

[1] This Decision will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published Ruling's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the entire Decision will be available to the public in its current form. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

22 ("Mot."). Petitioner opposed the motion on September 23, 2022. ECF No. 24 ("Opp"). Subsequently, Respondent filed a Reply on October 7, 2022 (ECF No. 25) ("Reply"). Having reviewed the parties' submissions, I hereby determine (as discussed below) that Petitioner's claim is untimely, and also that she has not established a basis for equitable tolling of the limitations period.

## RELEVANT FACTUAL BACKGROUND[3]

Ms. Huntoon's pre-vaccination medical history included diagnosed multiple sclerosis ("MS"), diabetes, bilateral sensorineural hearing loss, muscle spasticity, mild ataxia, temporal arteritis, and episodes of dizziness and difficulty balancing, among other ailments. Ex. 1 at 15–17, 27; Ex. 2 at 146–62, 164, 198, 201–04; Ex. 14 at 2–4. On October 2, 2018, Petitioner (then 67 years old) received a flu vaccine during her annual physical examination. Ex. 1 at 15–17.

Two days later, on October 4, 2018, Petitioner had an appointment with her neurologist, Bharathy Sundaram, M.D. for treatment of her MS. Ex. 2 at 187–93. Petitioner reported on this date that for the prior three weeks, she had been experiencing excessive fatigue. *Id.* at 187. Petitioner also noted that two days earlier, she had received a vaccination and had since been experiencing "excessive dizziness" that had not subsided. *Id.* (In her affidavit, Petitioner pinpoints the onset of this dizziness, stating that on the drive home after receiving the vaccination, she felt "somewhat dizzy but otherwise alright." Ex. 20 at 1. By the day of her visit to Dr. Sundaram, however, she felt "extremely dizzy and off-balance" when she woke up. *Id.*) And Petitioner reported during the October 4th treatment visit that she felt a "room spinning sensation when she lays flat and then gets up." Ex. 2 at 187.

Upon examination, Dr. Sundaram noted that Petitioner had acute onset of vertigo, gait changes, headache, fever, and extreme fatigue. Ex. 2 at 192. Petitioner was thus diagnosed with acute cerebellar ataxia and directed to visit the emergency room ("ER").[4] *Id.* Petitioner went to the ER at Texoma Medical Center and was admitted to the hospital, remaining until October 11, 2018. Ex. 3 at 355. Meena Betha, M.D., performed Petitioner's admission evaluation. *Id.* at 355–60. Dr. Betha noted that Petitioner received a vaccination two days earlier, and since then had been experiencing dizziness. *Id.* at 355. Dr. Betha diagnosed Petitioner with ataxia associated with dizziness—although she questioned whether the ataxia was secondary to an exacerbation of her MS. *Id.* at 357. Petitioner's brain CT scan (performed on the same day) did not reveal evidence of an acute intracranial abnormality. Ex. 2 at 323.

---

[3] The medical records are summarily addressed to focus on the relevant records impacting the motion to dismiss.

[4] Dr. Sundaram added that she spoke with a treater at Texoma Medical Center's Emergency Department regarding "the cerebellar inflammation, post vaccination related changes." Ex. 2 at 192.

On October 5, 2018, Petitioner had a neurology consultation with Shyama Satyan, M.D., (while she was admitted at Texoma Medical Center). Ex. 3 at 370–72. Dr. Satyan noted that Petitioner received the flu vaccine on the previous Tuesday (October 2, 2018), and that she did not feel well after receiving it. *Id.* at 370. Dr. Satyan added that Dr. Sundaram suspected that Petitioner had "acute cerebellar ataxia due to flu injection." *Id.* Dr. Satyan stated that Petitioner had ataxia, and that it "started on Tuesday night" (October 2, 2018). *Id.* at 371. Dr. Satyan added that Petitioner was also suspected to have acute cerebellar ataxia that was "secondary to both post vaccine" and Petitioner's ataxic symptoms "started after a flu vaccine." *Id.* Dr. Satyan noted that another possible cause of Petitioner's ataxia was exacerbation of her MS. *Id.* Dr. Satyan started Petitioner on Solu-Medrol. *Id.*

An MRI of Petitioner's cervical spine performed on the same day did not reveal enhancement of MS-related lesions. Ex. 2 at 327. An MRI of Petitioner's brain, also performed on October 5, 2018, revealed very mild age-related atrophy with a mild, chronic white-matter ischemic pattern bilaterally. *Id.* at 325. An MRI of Petitioner's lumbar spine, performed on October 7, 2018, revealed degenerative changes and diffuse suppression of the marrow signal. *Id.* at 330. Regarding the finding of diffuse suppression of the marrow signal, Paul Wheeler, M.D., the radiologist who read the MRI of Petitioner's lumbar spine, recommended clinical correlation. *Id.* An MRI of Petitioner's thoracic spine, also performed on October 7, 2018, revealed degenerative changes, heterogenous appearance of marrow signal within the sternum, and diffuse suppression of marrow signal in the thoracic spine. *Id.* at 331–32.

On October 11, 2018, nurse practitioner ("NP") Emmy Kirui-Modi performed a neurological examination on Petitioner. Ex. 3 at 408–12. NP Kirui-Modi's assessment included "[a]cute cerebellar ataxia-suspect secondary to recent flu vaccine." *Id.* at 412. That same day, Petitioner was discharged from Texoma Medical Center and was transferred to Carrus Rehabilitation Hospital ("CRH") for inpatient rehabilitation from October 11, 2018 to October 16, 2018. *Id.* at 345–52; Ex. 4 at 39.

Petitioner continued to have follow-up appointments with neurology and undergo testing along with other ailments that required physician visits and even hospitalization (unrelated to her cerebellar ataxia)[5] throughout October 2016 until June 2021.

**PROCEDURAL HISTORY**

As noted above, the case was initiated in October 2021. Petitioner's counsel claims to have filed the Petition on October 4, 2021, around 9:00 p.m. (CST)—and indeed, he dated the Petition for October 4, 2021—using the Public Access to Court Electronic Records ("PACER") system.

---

[5] Petitioner was not diagnosed with post-viral syndrome (another claimed injury in this case) until November 2018. Pet. at 5.

3

Opp. at 5. The Petition was thereafter formally received and marked as filed by the Clerk of Court for the following day—October 5, 2021. *Id.* at 5–6. The case was later assigned to me, and I held a status conference ordering Respondent to file a Rule 4(c) Report. *Scheduling Order*, dated April 21, 2022. The parties thereafter submitted briefs on the issues of onset, timeliness, and equitable tolling. ECF Nos. 22, 24–25.

## RELEVANT LEGAL STANDARDS

The Vaccine Act's statute of limitations is three years/thirty-six months. Section 16(a)(2). The statute begins to run from the manifestation of the first objectively cognizable symptom, whether or not that symptom is sufficient for diagnosis (or even recognized by a claimant as significant). *Id; Carson v. Sec'y of Health & Human Servs.*, 727 F.3d 1365, 1369 (Fed. Cir. 2013). Special masters have appropriately dismissed cases that were filed outside the limitations period, even by a single day or two. *See, e.g.*, *Spohn v. Sec'y of Health & Human Servs.*, No. 95-0460V, 1996 WL 532610 (Fed. Cl. Spec. Mstr. Sept. 5, 1996) (dismissing case filed one day beyond thirty-six-month limitations period), *mot. for review denied*, slip. op. (Fed. Cl. Jan. 10, 1997), *aff'd*, 132 F.3d 52 (Fed. Cir. 1997).

The Federal Circuit has held that the doctrine of equitable tolling can apply to Vaccine Act claims. *See Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1340-41 (Fed. Cir. 2011). However, in keeping with applicable U.S. Supreme Court precedent, equitable tolling of a limitations period is to be permitted "sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, (1990). The appropriateness of equitable tolling is ultimately to be determined on a case-by-case basis, without rigid application of any relevant overarching guidelines. *Holland v. Florida*, 560 U.S. 631, 649–50 (2010); *accord Arctic Slope Native Ass'n v. Sebelius*, 699 F.3d 1289, 1295 (Fed. Cir. 2012).

Initially, the Federal Circuit primarily enumerated fraud and duress—but not, for example, lack of awareness on a petitioner's part that she might have an actionable claim—as bases for tolling. *Cloer,* 654 F.3d at 1344–45 (noting that tolling of the Vaccine Act's statute of limitations period is not triggered "due to unawareness of a causal link between an injury and administration of a vaccine"). But after *Cloer,* some special masters reasoned that mental incapacity might also be appropriate grounds for tolling. *See,* e.g.*, Gray v. Sec'y of Health & Human Servs.,* No, 15-146V, 2016 WL 6818884, at *7 (Fed. Cl. Spec. Mstr. Oct. 17, 2016) (deeming mental incapacity "an extraordinary circumstance beyond the control of the petitioner"); *J.H. v. Sec'y of Health & Human Servs.,* 123 Fed. Cl. 206 (2015), *on remand,* No. 09-453V, 2015 WL 9685916, at *7 (Fed. Cl. Spec. Mstr. Dec. 21, 2015) (finding that "petitioners in the Vaccine Program may invoke equitable tolling based upon mental illness").[6] Then, in *K.G. v. Sec'y of Health & Hum. Servs.*, 951

---

[6] Both *Gray* and *J.H.* employed a "stop-clock" approach in calculating the overall limitations period, referencing Federal Circuit law in support. *Gray v. Sec'y of Health & Human Servs.,* No. 15-146V, 2016 WL 787166, at *6 (Fed.

4

F.3d 1374, 1380–82 (Fed. Cir. 2020), the Circuit more explicitly endorsed the proposition that mental incapacity is a basis for equitable tolling in the Program.

## ANALYSIS

I.      **Petitioner's Date of Onset Occurred Before October 4, 2018**

Petitioner proposes an onset date occurring after October 5, 2018, relying on previous cases finding that symptoms for cerebellar ataxia can begin within four to seven days after vaccination. Opp. at 8–9; *Stewart v. Sec'y of Health & Hum. Servs.*, No. 06-287V, 2007 WL 1032377, at *16 (Fed. Cl. Spec. Mstr. Mar. 19, 2007). Respondent, by contrast, maintains that Petitioner's onset occurred between October 2nd and 4th at the latest (with the possibility that Petitioner's symptoms actually began pre-vaccination), and therefore that the claim was filed in an untimely manner. Mot. at 15–19; Reply at 7–10.

The evidence found in the medical record preponderantly supports an onset date prior to October 4, 2018. First, as she stated to multiple treaters (and as reiterated in Petitioner's affidavit), Ms. Huntoon became dizzy *on the day* she received her flu vaccine—October 2nd. Ex. at 187; Ex. 3 at 355, 370–71; Ex. 20 at 1. Second, Petitioner's treaters first diagnosed her with acute cerebellar ataxia *on* October 4th (meaning her symptoms had to have manifested by that time), and she was subsequently admitted to the ER that same day. Ex 2 at 192. Ataxia can present medically with dizziness (vertigo), and it appears on this record that treaters considered Petitioner's complains of dizziness to represent ataxia. *See Ataxia*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/ataxia/symptoms-causes/syc-20355652 (last visited on Jan. 31, 2023). Indeed, there is evidence in this record of dizziness *preceding* the date of vaccination. Ex. 2 at 162.

Thus, this record does not permit the conclusion that Petitioner's onset occurred on October 4, 2018. In Program cases, onset is measured from first manifestation of symptom, regardless of whether it is understood in that manner—or whether additional symptoms progression confirming the diagnosis occur later in sequence. *See* Section 16(a)(2); *see also Cloer,* 654 F.3d at 1335, 1340.

Though Petitioner points to timeframes for cerebellar ataxia that have been deemed medically acceptable in previous cases, they do not determine Petitioner's onset date *in this case*. Rather, they merely stand as potentially-reliable timeframes in which a comparable condition *could* occur post-vaccination. But the relevant contemporaneous medical records clearly indicate that Petitioner's symptoms began before October 4th. *See Burns v. Sec'y of Health & Human Servs*.,

---

Cl. Spec. Mstr. Feb. 4, 2016), *citing Checo v. Shinseki*, 748 F.3d 1373, 1379 (Fed. Cir. 2014). Under this approach, "the statute is tolled for the period of severe mental disability and begins to run again when the petitioner is capable of asserting a claim." *Gray,* 2016 WL 787166, at *6.

3 F.3d 415, 417 (Fed. Cir. 1993) (finding that it is within the special master's discretion to determine whether to afford greater weight to contemporaneous medical records than to other evidence provided that such determination is evidenced by a rational basis for the decision). And in this case, there is no inconsistency between witness statements and the records to be resolved—since all point to an earlier onset.

### II.   Petitioner's Claim is Untimely and Not Subject to Equitable Tolling

To comply with the statute of limitations, this Petition must have been filed within 36 months of the first occurrence or manifestation of Ms. Huntoon's cerebellar ataxia. Based on my determination above, her symptoms most likely began sometime between October 2 and October 4, 2018, so the Petition needed to be filed before October 4, 2021. But it was filed no *sooner* than October 5th, as evidenced by the Court's CM/ECF system. And even if I were to credit the October 4th filing date argument made by Petitioner (which relies on somewhat unsubstantiated contentions about malfunctions in the filing system), the claim would still be untimely. *Spohn*, 1996 WL 532610.

Petitioner argues that equitable tolling should apply, due to the extraordinary circumstances of the alleged PACER system failure. Opp. at 3, 5–7; *see also Mojica v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 96, 101 (2011) (permitting tolling due to a delivery error by a courier service "upon which courts and attorneys routinely rely"). But not only do the present circumstances not involve a comparable error beyond the Petitioner's control, but (as noted above) *even* an October 4th filing date would have been untimely—since the alleged filing system failure would have occurred *after* the running of the limitations period.

Petitioner's argument that mental incapacity (attributable to her demonstrated medical issues, which are admittedly considerable)[7] provides a basis for equitable tolling is also unavailing. Opp. at 3–4. Petitioner has simply not demonstrated that the burdens imposed on her by her health issues resulted in outright mental incapacity at any time during the three-year period after October 2-4, 2018, such that she was incapable of "rational thought or deliberate decision making," or "incapable of handling [her] own affairs or unable to function [in] society." *Barrett v. Principi*, 363 F.3d 1316, 1321 (Fed. Cir. 2004). The unquestionable impact of her medical suffering has not

---

[7] In her Response, Petitioner lists the following illnesses and conditions that she had previously and/or developed the two years following her vaccination—MS, cerebellar ataxia, intractable migraine, diabetes, acute blood loss anemia, acute lower GI bleeding, GI hemorrhage, a history of temporal arteritis, post-vaccine polyneuritis, acute inflammatory demyelinating polyneuropathy, myasthenia gravis, chronic spastic paraplegia, idiopathic progressive neuropathy, iron deficiency anemia, post-vial syndrome also known as chronic fatigue syndrome or myalgic encephalomyelitis ("ME/CFS"), giant cell arteritis ("GCA"), polymyalgia rheumatica ("PMR"), muscle weakness, fatigue, GCA, osteopenia, generalized osteoarthritis of the wrist, ischemic colitis, hyperkalemia, muscle spasticity, abnormality of gait and mobility, rheumatoid factor positive, mononeuropathy, neuropathy of the right peroneal nerve, neuropathy of the left sciatic nerve, mild diverticulosis in the sigmoid colon, stable angina, hypertension, coronary artery disease, and lumbar spondylosis. Opp. at 4.

been shown to rise to the level of the kind of mental capacity observed in other cases as a basis for tolling. *See, e.g.*, *K.G.*, 951 F.3d at 1376 (finding that after an alleged vaccine injury, the petitioner had succumbed to alcoholism, spent months in the hospital, and developed amnesia, such that she was later declared by an Iowa state court to be incapable of caring for herself and appointed a guardian); *Gray,* 2016 WL 787166, at *1, 3–4 (contending that petitioner was "unable to engage in rational thought" which prevented her from "managing her affairs and thus from understanding her legal rights and acting upon them" and provided numerous records from her providers that she need assistance from her daughter or son-in-law during her treater visits); *J.H.,* 2015 WL 9685916, at *21, 24 (noting that petitioner experienced severe mental illness, which included delusions, suicidal ideation, and severe obsessional rituals).

Petitioner correctly observes that when interpreting doctrines like equitable tolling, the Circuit counsels special masters to be mindful of the fact that the Program embodies a "pro-claimant regime meant to allow injured individuals a fair and fast path to compensation." Opp. at 2; *K.G.*, 951 F.3d at 1380 (*citing Cloer*, 654 F.3d at 1325). But the U.S. Supreme Court has *also* noted that equitable tolling is to be used sparingly. *Irwin*, 498 U.S. at 96. And here, the circumstances supporting its application are absent. Thus, although it is regrettable to have to dismiss a claim that falls just outside the defined limitations period, the Act obligates me to do so.

## CONCLUSION

For the reasons set forth above, Petitioner's claim is untimely and not subject to equitable tolling. Respondent's Motion to Dismiss is therefore **GRANTED.** In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk of Court shall enter judgment in accord with this Decision.[8]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.